## BRANDENBERG v. ZEIGLER.

1. SURFACE WATER.—Water from the surrounding lands, collecting in a pond or basin without an outlet, which in rainy seasons collects and holds quantities of water, but which at times by evaporation and percolation becomes dry, is surface water.

2. IBID.—NUISANCE—DAMAGES.—It is an actionable injury to a lower proprietor for an upper one to drain by a ditch surface water collecting in a pond on his lands on to the lower proprietor so as to injure his lands and health.

Before GARY, J., Orangeburg, January, 1900.    Reversed.

Action for damages and for removal of nuisance by Eliza C. Brandenberg, as guardian *ad litem* of Minnie Halman, and Perry E. Brandenberg, W. Wm. Brandenberg, Harvy C. Brandenberg and Effie C. Jones, against Jesse L. Zeigler and Charlotte Buyck. From order of nonsuit, plaintiffs appeal.

*Messrs. Glaze & Herbert* and *Izlar Bros.*, for appellant. (No argument furnished Reporter.)

*Messrs. Raysor & Summers* and *J. B. McLauchlin*, contra. The former cite: *As defining surface water:* 24 Ency., 897, 904; 5 R. I., 253; 11 Exc., 615; 79 Mo., 446; 27 Wis., 656; 62 Wis., 112; 78 Mo., 504; 18 Mo., 251; 10 Gray, 601; 7 Allen, 19; 35 Am. St. R., 163; 36 Am. St. R., 937; 34 Minn., 487. *Our State has adopted the common law rule as to surface water:* 39 S. C., 472; 54 S. C., 246; *and under this rule the facts here do not make out an actionable injury:* 54 S. C., 246; 86 Am. Dec., 217; 38 Am. R., 748, 753; 44 Am. R., 116; 87 Am. Dec., 625; 27 Am. St. R., 79; 18 Mo., 251; 16 Mo., 485; 29 Mo., 370; 47 Am. St. R., 132; 6 L. R. A., 573; 51 Am. R., 715; Angel on Watercourses, 534; 21 L. R. A., 595; 14 L. R. A., 497. *An owner may improve his land for agricultural purposes by ditching or draining surface water on the lands of the lower proprietor:*

Angel on Watercourses, 534; 55 Minn., 259; 39 Am. St. R., 344; 14 Am. St. R., 402; 33 Am. R.; 474; 29 N. Y., 459; 10 Ohio, 294; 26 L. R. A., 634; 32 Am. Dec., 120; *and for same purposes an owner may drain a pond or sink:* 24 Ency., 903; 50 Am. Rep., 627; 29 N. Y., 459; 26 Penn. St., 407, 415; 47 Penn. St., 154; 11 Exch., 602, 369; 12 Ohio St., 294. *Where common law rule does not prevail it is sometimes held increase of natural flow is not actionable:* 107 N. Y., 650; 109 N. Y., 180; 31 L. R. A., 549. *And so some of the Courts holding the civil law rule:* 33 L. R. A., 796; 15 L. R. A., 300; 149 Pa., 415; 128 L. R. A., 271; 21 L. R. A., 615.

October 3, 1901. The opinion of the Court was delivered by

MR. JUSTICE JONES. This is an appeal from an order of nonsuit in an action for damages, and to abate a nuisance alleged to result from defendants draining a pond of water which otherwise had no outlet from their lands onto the lands of plaintiffs, by means of a ditch cut by them, thereby overflowing and sobbing about four acres of plaintiffs' land and rendering it unfit for agricultural purposes, and thereby also causing impure water to percolate into plaintiffs' well, and rendering it unfit for drinking purposes, and thereby also causing malaria about plaintiffs' dwelling, to the injury of her health and that of her family. The answer, besides a general denial, sets up a prescriptive right to so drain onto plaintiffs' land. The Circuit Court in granting the nonsuit held that the water in question was mere surface water, that defendants could deal with it as a common enemy and drain it by ditch onto the plaintiffs' land, that any injury resulting therefrom was *damnum absque injuria,* and that the case was governed by the doctrine announced in *Edwards* v. *R. R. Co.,* 39 S. C., 472, and *Baltzeger* v. *R. R. Co.,* 54 S. C., 242.

The exceptions raise practically two questions: 1. Whether the water complained of is surface water. 2.

Whether an upper proprietor has the right by artificial drains to collect surface water and thereby cast or throw it upon a lower proprietor to his injury.

We agree with the Circuit Court, that the water in question was mere surface water. The complaint described the water as drained from "a large open pond, basin or sink, commonly called a savanna, which is naturally and completely surrounded by high hills, and which for the greater part of the time, and especially during rainy seasons, collected and held large quantities of water, which was naturally safely kept and held in said basin, sink or savanna by means of the surrounding high lands and hills; and that before the grievances hereinafter complained of and mentioned, the waters from said pond, basin or savanna did not and could not reach or in any way effect the said lands of plaintiff, &c." The evidence showed that the only source of supply to this pond or basin was rain falling upon the surrounding high lands which drained over the surface thereof and accumulated in the said basin, from which it had no outlet except by evaporation or percolation, until the cutting of the ditch complained of; that said pond was not permanent, that it was dry at times; that one year it was planted to cotton, and that it was usually planted to rice. Such water is nothing more than mere surface drainage over the face of the surrounding lands sloping to the basin, occasioned by rains, and does not possess the essential characteristics of a water course, viz: a stream of water usually flowing in a definite channel. In a note to *Cairo &c. R. R. Co.* v. *Brevoort*, 25 L. R. A., 527, the learned annotator, after collecting many cases on the subject, says: "From all the cases and definitions it would seem that surface water is water on the surface of the ground, the source of which is so temporary or limited as not to be able to maintain for any considerable time a stream or body of water having a well defined and substantial existence." In the recent case of *Lawton* v. *the South Bound R. R. Co.*, 61 S. C., the Court quoted with approval the following definition

from 24 Ency. Law, 896: "Surface waters are waters of a casual and vagrant character, which ooze through the soil, or diffuse or squander themselves over the surface, following no definite course. They are waters which though customarily and naturally flowing in a known direction and course, have nevertheless no banks or channels in the soil, and include waters which are diffused over the surface of the ground, and are derived from rains and melting snows, occasional outburst of water, which at times of freshet or melting of snows descend from the mountains and inundate the country; and the moisture of the wet, spongy, springy or boggy ground." Under this definition there can be no doubt that the water which supplied the basin or pond was surface water only, and we think that such water would not lose its character as such simply because the water remained ponded in the basin for a time until it disappeared through evaporation or percolation, leaving the bottom of the basin either dry or in a boggy or marshy condition.

We do not agree with the Circuit Court, however, in the view taken as to the second question stated above. There being some evidence tending to show that plaintiff had sustained injury as alleged by the draining of said water by an artificial channel constructed by defendants, which cast the water onto plaintiffs' lands, where it would not have otherwise gone, the case ought to have been submitted to the jury. It is clearly settled by the decisions of this Court that the common law rule as to surface water prevails in this State. *Edwards* v. *R. R. Co.,* 39 S. C., 475; *Baltzeger* v. *R. R. Co.,* 54 S. C., 245; *Lawton* v. *R. R. Co.,* 61 S. C. In the case first cited, the Court, speaking by Chief Justice McIver, said: "Under the common law rule, surface water is regarded as a common enemy, and every landed proprietor has the right to take any measures necessary to the protection of his own property from its ravages, even if in doing so he throws it back upon a coterminous proprietor to his damage, which the law regards as a case of *damnum absque injuria,* and affords no cause of action."

Under the civil law, by reason of the location, the upper estate has an easement or servitude in the lower estate for the natural flow of surface water from the former to the latter, so that the owner of the lower or servient estate cannot lawfully obstruct such flow. On the other hand, the common law does not recognize any such easement or servitude, and in view of the owner's dominion over his property, permits the proprietor of land to protect his property from the invasion of surface water. Under this principle of the common law, the three cases cited above were decided, each case involving the question whether a proprietor of land may not lawfully refuse to receive surface water upon his premises by embankment against. We deal now with a different question. In the case of *Barkley* v. *Wilcox,* 86 N. Y., 140, 40 Am. Rep., 519, the Court said: "There is a manifest distinction between casting water upon another's land and preventing the flow of surface water upon your own." In that case the Court recognized the principle that "the owner of wet and spongy land cannot by drains or other artificial means collect surface water into channels, and discharge it upon the land of his neighbor to his injury;" saying further: "this is alike the rule of the civil and common law." In the cases cited, the Court, enforcing the common law rule, held that no action would lie for cutting off the flow of surface water, even though injury was incidentally done to another. In Massachusetts, where the rule of the common law is enforced, the same distinction is recognized; for in the case of *Rathke* v. *Gardner,* 134 Mass., 14, the Court said: "But there is a well settled distinction, that although a man may make any fit use of his own land which he deems best, and will not be responsible for any damages caused by the natural flow of the surface water incident thereto, yet he has not the right to collect the surface water on his own land into a ditch, culvert or other artificial channel and discharge it upon the lower land to its injury." In 24 Ency. Law, 928, it is stated: "Nor can the owner of the upper land collect the waters of his estate into a ditch or drain and dis-

charge it in a volume on the lower land to its injury.    It is
no defense to an action for wrongfully discharging surface
water on the plaintiff's lands, that the plaintiff might, by
taking steps to protect his land, have avoided or prevented
the damage.    The rule that one owner of land who collects
water in a body and casts it upon the lower premises to their
injury is responsible in damages, is followed alike in the
States which have adopted the common law, as well as those
which have adopted the rule of the civil law."    The author
cites many cases, and in so far as we have been able to exam-
ine the cited cases, they support the text.    In an elaborate
note to *Gray* v. *Williams,* 21 L. R. A., 593, the learned
annotator shows that "the great majority of the Courts,
whether inclined to follow the civil law or the so-called com-
mon law, unite in holding that whatever else may be done
with surface water, the proprietor whose land it has reached
cannot divert it from its natural course and cast it in a body
on an adjoining proprietor."    See the following cases from
States which have adopted the common law rule: *Adams* v.
*Walker,* 34 Conn., 466, 91 Am. Dec., 742; *Pye* v. *City of
Mankato,* 36 Minn., 373; I. Am. St. Rep., 671; *Davis* v. *City
of Crawfordsville,* 119 Ind., 1, 12 Am. St. Rep., 361; *Rich-
licki* v. *City of St. Louis,* 98 Mo., 497, 14 Am. St. Rep., 651;
*Pettigrew* v. *Evansville,* 25 Wis., 223, 3 Am. Rep., 50.
See, also, Angell on Watercourses, 7 ed., p. 133, and cases
collected in 4 Leading Cases Am. Law of Real Property,
340.    In a recent case from Wisconsin, *Schuster* v. *Al-
brecht,* 73 N. W. Rep., 990, the Court held that the owner of
land on which there is a pond of surface water cannot law-
fully conduct it by an artificial channel to a point where it
would inevitably permeate the surrounding soil and perco-
late through the same into and permanently injure his
neighbor's land.    The rule announced we think is reason-
able.    When one having the right to cut off surface water
from his land, nevertheless, permits such water to collect in
a natural basin on his land, he has an absolute right of prop-
erty in such water and may use it exclusively as his own.

His dominion over such water is as great as his dominion over the realty upon which it rests and of which it is a part. He can no more cast such water by artificial means injuriously upon his neighbor than he could cast the mud or soil upon his neighbor's premises. In either case, he would violate the neighbor's right of dominion over his own property. The absolute right of the lower proprietor to embank against the flow of surface water and thereby cause it to rest upon the upper proprietor's land is wholly irreconcilable with the claimed right of the upper proprietor by artificial means to collect and cast such water upon the lower proprietor. It is a maxim of the common law, *sie utere, &c.,* that every one must so exercise his legal right as not necessarily to injure another in the exercise of his legal right. If, therefore, the upper proprietor has no easement to drain surface water upon the lower proprietor either by natural or artificial means, and the lower proprietor has the legal right to cast it back upon the upper proprietor, it would seem unreasonable to hold that the upper proprietor may nevertheless lawfully collect such water in artificial channels and throw it upon the lower proprietor. The upper proprietor may acquire the right to drain surface water onto his neighbor's land through artificial channels by prescription. This, of course, involves a right of action to prevent such prescriptive right.

The testimony in this case was to the effect that the pond of water was wholly upon the land of the defendant, Zeigler; that in 1873, John Brandenburg, a former owner, partially drained this pond by a ditch of small depth over his land to the land of defendant, Charlotte Buyck, then owned by R. E. Clark; that about 1886, Clark extended this ditch some distance across his land; that about 1894, the defendants, Zeigler and Buyck, deepened this ditch so as to completely drain the pond; that the ditch ended on Buyck's land 428 yards from plaintiff's land, but that the water flowing from the ditch made a gully down the slope through which

it flowed onto plaintiff's land below, and there was evidence tending to show that plaintiff was thereby injured.

It was improper to nonsuit. The judgment of the Circuit Court is, therefore, reversed and the case remanded for a new trial.