8702

SLATER v. PRICE.

1. SURFACE WATERS—DITCH.—The instruction that one cannot collect surface water in concentrated form and then cause it to injure his neighbor was not prejudicial to appellant in a suit for damages caused his neighbor's land by obstructing a drain ditch, dug by the owner and so used, before and after the tract was subdivided and sold in two tracts with the drain ditch running through both tracts.

2. EASEMENT—IBID.—BURDEN OF PROOF.—When the owner of one tract of land shows that his land has been drained for more than 20 years through a ditch across an adjoining tract, he thereby casts the burden on the other side of showing such use was permissive.

MESSRS. JUSTICES HYDRICK *and* FRASER *dissent.*

3. IBID.—IBID.—The instruction here that where the owner of a tract of land cuts a drain through it and the land is afterwards subdivided and sold so that the drain ditch runs through both tracts the party buying the servient tract, purchases it subject to the burden, is applicable under the issues and evidence.

MESSRS. JUSTICES HYDRICK *and* FRASER *think this issue should have been sent to the jury.*

4. IBID.—IBID.—Under the evidence here, verdict should stand only against the one of two joint owners of a tract of land through which another has acquired an easement of drainage, who was in possession of the land and obstructed the ditch.

Before WILSON, J., Darlington, Spring term, 1912. Modified.

Action by Wiley Slater and Amos Slater against W. W. Price and Irvin Price. Defendants appeal.

JUDGE'S CHARGE.

"Mr. Foreman and Gentlemen of the Jury: Wiley Slater and Amos Slater, as plaintiff's sue W. W. Price and Irving Price for damages. They claim in the first paragraph of the complaint that at the times stated in there that you have heard, you can have the complaint and see it, that the plaintiffs were the owners and in the peaceable possession of the place described in the complaint, and that is admitted by the

answer. Then, they go on further and claim that the title to this land is in the name of Amos Slater, and that the possession of the land was in Wiley Slater, as tenant, he having a part of the land planted in 1910. And, further, that in this land cultivated by him there is an old ditch passing through the land, and through the adjacent lands of the defendant also; that the said ditch has been used for more than forty years to drain the adjacent lands of the plaintiffs and defendants, and was a necessity in order to make the said lands more arable. That the said ditch was dug more than forty years before that for the purpose of drying out and making more arable the lands now owned by the plaintiff and the defendants, and that this ditch has been maintained and used all these years for that purpose. That the ditch commences on the lands of and in the possession of the plaintiffs, and after running through their land continues down on to the lands of the defendants to an outlet below the defendants' lands, and has been used as such, draining the water and letting the surface water off of this land, making the land more arable for the purpose of planting crops more than forty years, and that there is no other way to carry off the surface water from these lands. That if it were not for this ditch these lands would be subject to overflow by surface water, if it was not for this ditch. That during the year 1910, the plaintiff, Wiley Slater, as tenant of his coplaintiff, Amos Slater, planted these lands near this ditch in cotton, and that in June of that year he had this ditch thoroughly cleaned out down to the line of the defendants, the ditch having been previously cleaned out through the defendants' land, and it was in good condition to carry off the surface water from the plaintiff's crops planted along the line of the said ditch, and if the ditch had been allowed to remain in said condition, he, the plaintiff, Slater, would have made a good crop on the land along the ditch and adjacent thereto, that his cotton would not have been damaged by the surface water sobbing through

the land. Then repeats the allegation that the ditch had been used by the plaintiffs and their grantors for more than forty years. That on or about the 25th of June the defendants wilfully and wantonly, and with intent to injure and damage these plaintiffs, closed up the said ditch with dirt, where the ditch crosses from the lands of the plaintiffs to the lands of the defendant, and that in the filling up of said ditch with sand, dirt, debris, etc., several feet on the plaintiff's land were also filled up—not only at the line, but several feet of the ditch that was on the plaintiff's land were also filled up—that that prevented the water from passing through the said ditch off of plaintiff's land, and following the same course which it has been going for forty years. That by filling the ditch up, the surface water, the stagnant water, was backed on the plaintiff's lands and on his crops, injuring the land by overflowing it with surface and stagnant water and ruining several acres of his growing crops on the land. That such acts were done maliciously by the defendants, and that they intended to keep it closed, having said so, and having refused to allow the said ditch to be reopened. and that that conduct is with malicious intent to destroy the fertility of the soil, and also to injure the health of his family, who live there. That by the backing of the water— that by filling the ditch it did cause the water to back and injure his crops, and also caused fever and sickness in his family, and injured him in that way. And reiterates the allegation that all this was done maliciously and wantonly, and that he has been damaged in the amount of two thousand dollars—that they have been damaged in the amount of two thousand dollars.

"Now, the defendants, after admitting that first allegation, deny all the other allegations, and put the plaintiff on proof.

"Now, gentlemen, what are damages in law? It is a sum of money assessed by a jury for the successful party or parties in an action as compensation for the injury done

him or them by the opposite party. Damages may be actual or compensatory—that is the same thing—an amount to make the party injured whole, so to speak, for the actual injury. Damages may also be vindictive, punitive or exemplary. All three of those terms mean the same thing in law. Those kind of damages are more than actual damages, they are given by way of punishment for the wrong doing—for the purpose of punishing the party committing the wrong, and also to deter all those who might act likewise. Damages may be actual or compensatory—that is the same thing, or they may be vindictive, punitive or exemplary. Now, in this case, they sued for both the actual damages sustained and for punitive damages.

"Gentlemen, you have heard a heap said about surface water. That is water that rains down, not the water that flows in natural channels like a stream. There is a good deal said about surface water. In a recent case that went up from my county, the Supreme Court in that case used the following language in speaking of surface water, and quoted the lamented Justice McIver, and the Court said this: 'The obstruction of the flow of surface water and the waters of a natural watercourse are two distinct and very different things, and are attended by entirely different consequences. The former is not actionable, while the latter, if resulting in damage to an adjoining land proprietor, is actionable. In this State, at least, it is well settled that the common law rule prevails, and that surface water is regarded as a common enemy which each land proprietor may keep off his own premises, even though by so doing he may throw or keep it on his neighbor's premises.'

" 'The gist of the common law is that one may do as he pleases with his property, regardless of the effect upon surface water. This rule recognizes the right of each proprietor to fight surface water, and the result is that, if carried to its ultimate conclusion, it simply means that the Courts will recognize no wrong in any action undertaken for the pur-

pose of getting rid of surface water.   In other words, no legal right of any kind can be claimed, *jure naturae,* in the flow of surface water, so that neither its detention, diversion or repulsion is an actionable injury, even though damage ensue.'   There are only two exceptions to the rule; first, it is subject to the general law in regard to nuisances, if its accumulation has become a nuisance *per se,* as for example, whenever it has become dangerous at all times and under all circumstances to life, health or property; second, it is an actionable injury for a person to collect surface water into an artificial channel and cause it to injure another's land.   While you can protect your property from the injury done you by surface water—you do it for the protection of your property—and if you use legitimate means you are not responsible if in doing that it hurts somebody else.   But you can't collect it in concentrated form, so says the law, and then cause it to injure your neighbor.

"Now, there is another thing.   There is such a thing as an easement, whereby you can get a right—buy a right—to go through a man's land, and you have that right, you have a deed to that.   Or, if some of your former grantors, persons who owned this land long before you did, had the right to go through there, cut a ditch through there, and the owners of the land through which this ditch goes allow it to stay open there—allow it to be used for twenty years or more without objection or trouble, for twenty years or more, then an easement is acquired through that land, then it can not be stopped.   If it is allowed to stay open for twenty years or more, it can not be stopped without the party becoming liable for whatever injury it may cause the party off of whose land this ditch takes water.

"Now, in this case, Mr. Foreman and gentlemen of the jury, it is encumbent upon the plaintiff to make out his case by the greater weight or preponderance of the evidence. That means the weight that you gentlemen will give the evidence, the jury in any case will give the evidence.   That

does not necessarily mean the greater number of the witnesses, because a jury seeking after the truth, and that is what every jury should seek after, may put more faith in what one witness may say than in a half dozen others. Whenever a jury does that, so far as it is concerned, the preponderance of the evidence goes that way. It is encumbent upon the plaintiff to make out his case by that kind of evidence to your satisfaction. If they have done that, then your verdict will be: We find for the plaintiffs so many dollars, or so many dollars and cents, against either or both of the defendants. If they have failed to do that, then your verdict will be: We find for the defendants, and write your name as foreman.

Mr. Woods: "I would like your Honor to charge as to damage to crops.

The Court: "Well, gentlemen (addressing counsel) they heard the evidence on that.

Mr. Dennis: "I would ask your Honor to charge as to the continuity.

The Court: "Yes, sir; to clear a road or ditch, it must be a continuous use for twenty years or more in order to ripen into an easement. You can't use it for two years and stop it, and then open it up for ten years and stop it, and then use it for eight more years to make the twenty years.

"Mr. McLaughlin requested the Court to charge that where one owned a piece of land originally drained by a ditch, and sold off a portion through which the ditch drained, and it was necessary to drain that land, that the use of the ditch passed with the land.

The Court: "Yes, sir; I charge you that."

### EXCEPTIONS.

The defendants appeal on the following exceptions:

1st. "Because his Honor erred in charging the jury as follows, as to the question of surface water: 'Second, it is an actionable injury for a person to collect surface water

into an artificial channel and cause it to injure another's land. While you can protect your property from the injury done you by surface water—you do it for the protection of your property—and if you use legitimate means you are not responsible if in doing that it hurts somebody else. But you can't collect it in concentrated form, so says the law, and then cause it to injure your neighbor,' the error being that his Honor thus charged the jury that the mere collection of surface water would be an actionable injury, whereas such injury would not be actionable unless such surface water were collected and cast upon a neighbor's property in concentrated form so as to cause him damage. The mere collection of surface water upon one's own land or causing the collection of it upon a neighbor's land is not alone actionable, even though injury should occur therefrom.

2d. "His Honor erred in charging the jury as follows in regard to the question of easement set up in the complaint and involved in the case: 'Or if some of your former grantors, persons who owned this land long before you did, had the right to go through there, cut a ditch through there, and the owners of the land through which this ditch goes allow it to stay there—allow it to be used for twenty years or more without objection or trouble, for twenty years or more, then an easement is acquired through that land. then it cannot be stopped;' thereby charging the jury erroneously that the mere exercise of the right set forth, whether permissive or otherwise, for the period of twenty years would create an easement, whereas he should have charged that such an easement could not arise by a mere permissive right, but that the use must be adverse and continuous for the requisite period in order to create an easement.

3d. "Because his Honor erred in charging the jury as to the question of easement alleged in the complaint and involved in the case, as follows: 'If it is allowed to stay open for twenty years or more, it cannot be stopped without the party becoming liable for whatever injury it may cause

the party off of whose land this ditch takes water;' the error being that his Honor thus charged the jury that exercising a mere permissive right for a period of twenty years would create a liability against defendants if the ditch in question were stopped or discontinued by them, whereas the use in order to create any liability on the part of defendants must have been adverse in character and continuous for the requisite period, and a mere permissive use could not create the easement contended for by plaintiffs.

4th. "Because his Honor erred in charging the jury, at the request of plaintiff's attorney, as follows: 'Where one owned a piece of land originally drained by a ditch and sold off a portion through which the ditch drained, and it was necessary to drain that land, that the use of the ditch passed with the land;' the error being that although it might be very necessary to drain the land, it might not be necessary to drain it by the particular ditch which the plaintiffs were claiming the right to use, and an easement or right to the use of the ditch could not be claimed in such case unless it was absolutely necessary to drain the water through that particular ditch.

5th. "Because his Honor erred in refusing defendant's motion for a new trial on the ground that there was no testimony whatever upon which to base a verdict against the defendant, Irving Price, there being no testimony connecting him with any of the alleged matters set forth in the complaint or that he had any connection with anything done by his codefendant in respect to the ditch in question, and his Honor should accordingly have set aside the verdict and directed a new trial of the case.

6th. "Because his Honor erred in refusing defendants' motion for a new trial on the ground that there was no testimony upon which to base a verdict for damages: first, because there was no testimony offered by the plaintiffs to establish any amount of damages actually sustained either as to lands referred to in the complaint or the crops thereon;

second, because there was no testimony offered to establish the right to punitive damages as to either of the defendants."

*Messrs. E. O. Woods* and *E. C. Dennis,* for appellants, cite: *As to collecting surface water:* 62 S. C. 18; 39 S. C. 472; 54 S. C. 242. *Presumptive acquisition of use:* 4 Rich. 52; 2 Mill Con. R. 425; 40 S. C. 180; 86 S. C. 468; 85 S. C. 6; 14 Cyc. 1150-51; 53 S. C. 514. *Plaintiff should not recover unless this ditch was only way to drain his lands:* 5 Rich. 413; 32 S. C. 130.

*Mr. J. B. McLaughlin,* contra, cites: *Use necessary to require an easement:* 39 S. C. 25; 32 S. E. R. 423; 77 Ill. 570; 22 Wis. 628; 15 Johns. 483. *Plaintiffs had the right to continue the use of the ditch:* 47 N. Y. 73; 21 N. Y. 505.

December 15, 1913. The opinion of the Court was delivered by

MR. JUSTICE WATTS. This was an action for damages by plaintiffs against the defendants. The complaint alleges that plaintiffs and defendants were owners of adjoining tracts of land, and that plaintiffs were damaged to the extent alleged in the complaint, to wit, $2,000, by reason of the defendants obstructing and shutting up a ditch, which drained the surface water from the tract of land owned by the plaintiffs. Both of the tracts of land involved were originally owned by one Reynolds, and both the plaintiffs and defendants acquired their titles through transfers subsequent to the ownership by Reynolds of the entire tract. The cause was tried by Judge Wilson and a jury, and resulted in a verdict for the plaintiffs for damages in the sum of one hundred dollars, and to reopen the ditch. A motion for a new trial was made on various grounds, which was overruled, and after entry of judgment defendants appealed and asked reversal of the same.

The exceptions should be set out in the report of the case.

Exception 1 complains of error on the part of his Honor in charging the jury as to the question of surface water. We see no error in the Judge's charge, taken as a whole, in reference to the matters complained of. There was some evidence tending to show that the obstruction of the ditch caused the water to be collected and thrown back on the lands of the plaintiffs, and that this obstruction, erected by the defendants, cast the water on the plaintiff's land and prevented it from going in the ditch erected and maintained for the purpose of carrying it off. The evidence shows that both tracts of land at one time were one tract, and owned by one Reynolds, and the ditch was put there to drain the land. C. L. Reynolds testifies that the land was owned by his father, that he had known the land all of his life. That at one time he owned the Price land, and that then his brother owned it. That the ditch had been there practically in the same place all of his life. It is true he does not say how old he is, but testifies he left the land in 1886, and that the ditch was there then. This action was commenced October 24, 1910, and the evidence shows that the ditch has been there over 23 years. There was evidence to go to the jury that this ditch had been there during the ownership of Reynolds of the entire tract, which land is now owned by the plaintiffs and defendants, that it was put there to drain the lands, and from that time it has been used for that purpose, and any interference by obstruction, constructed by the defendant to prevent the waters flowing in it from plaintiff's lands and casting it back on plaintiffs' land so as to injuriously affect it, was to be determined by the jury, and we fail to see how what his Honor told them in reference to surface water was prejudicial to the defendants, and it was not in conflict with the well considered cases of *Lawton* v. *South Bound R. R. Co.,* 61 S. C. 548, 39 S. E. 752, and *Brandenburg* v. *Zeigler,* 62 S. C. 21, 39 S. E. 790. The defendants made no request of the Court

to more fully charge along this line. This exception is overruled.

Exceptions 2 and 3 complain of error on the part of his Honor on the question of 26 years' use of the ditch in question would create an easement in the plaintiffs, even if such use was merely permissive. We think the appellants misapprehended the Judge's charge. Take it as a whole it is free from the errors complained of. There was evidence that the ditch had been in use over 20 years, without objection or hindrance from any one, and when plaintiffs established that by evidence then the burden was shifted to the defendants to rebut that, or show such use was permissive merely. The Judge charged in substance the law as laid down in the case of *State* v. *Kendall,* 54 S. C. 192, 32 S. E. 300, and *State* v. *Tyler,* 54 S. C. 295, 32 S. E. 422. He substantially charged the law applicable to the case, and if appellants desired a more extended charge it was their duty to embody their proposition in the form of a request. These exceptions are overruled.

Exception 4 alleges error on the part of his Honor in charging the jury that if it was necessary to drain the lands of the plaintiffs the use of the ditch in question passed with the lands. This exception must be overruled as the trial Judge in each case is allowed to charge the jury as to the law applicable to the points in issue made by the pleadings and evidence admitted in the case. There was no contention that the plaintiffs were attempting to drain their lands by trespassing upon, or taking defendants' land, but their contention was that Reynolds, the original owner of the entire tract of land, put the ditch there to drain the entire tract, and subsequently the tract was divided into two tracts with the ditch there for the use of both tracts, and it was necessary to use this ditch to drain the lands of plaintiffs, and plaintiffs and defendants both acquired the property subject to the burdens and benefits

that existed on it at the time they acquired it by purchase. The testimony showed the ditch had been there when Reynolds originally owned the land, that it has been used continuously for more than 20 years to carry the water off of plaintiffs' land, that this use had been uninterrupted, and his Honor committed no error in charging the jury as he did, taking his charge as a whole. Reynolds, the original owner of the entire tract, having put the ditch there to drain it, and later the place having been divided into two tracts, with the ditch there, and being used for more than 20 years for the purpose of draining the lands, the defendants could not stop the ditch, if plaintiffs had acquired an easement thereon, and it was necessary for plaintiffs to use it for that purpose, or suffer injury, and his Honor was correct in charging the jury on the law applicable to such a state of facts and leaving it to them to determine. *Lampson* v. *Milks,* 21 N. Y. 505; *Curtiss* v. *Agrault,* 47 N. Y. 73. Taking the charge as a whole we fail to see how the defendants were prejudiced thereby, as complained of by this exception, and this exception is overruled.

The 5th exception alleges error in not granting a new trial as to the defendant, Irving Price, on the ground that there was no evidence to support the verdict as to him. The evidence shows both of the defendants owned the land, and that W. W. Price was in possession for both, his Honor submitted to the jury the question both of compensatory and punitive damages. The verdict was: "We find for the plaintiff damages in the sum of one hundred dollars and reopen the ditch." There is no evidence in the case that would warrant a verdict against Irving Price for punitive damages. There is sufficient evidence to base a verdict against him that the ditch be reopened, and unless plaintiffs, within ten days after remittitur of this Court is sent down to Circuit Court, remits on record as to Irving Price the one hundred dollars as damages, so that the verdict will then be to reopen the ditch, and one

hundred dollars damages against W. W. Price, then a new trial shall be granted as to Irving Price.

Exception 6 alleges error in not granting a new trial as there was no evidence whatsoever to support the verdict as to any damages, either actual or punitive. A perusal of the evidence shows that there was ample testimony to support the verdict, and this exception is overruled.

Judgment affirmed as to W. W. Price.

New trial *nisi* as to Irving Price.

The CHIEF JUSTICE *concurs on the ground that when the charge is considered as a whole it is free from error.*

MR. JUSTICE HYDRICK, *dissenting.* I think the second, third and fourth exceptions should be sustained. The trial in the Circuit Court proceeded on the theory that the complaint alleged a cause of action for the obstruction of an easement which plaintiffs claimed on two grounds: 1. By prescriptions. 2. As a *quasi* continuous and apparent easement, which was created in favor of plaintiffs' land and imposed as a burden upon defendants' land by one Reynolds, while he owned both tracts, and was existing as such, when the unity of title and possession was severed.

After stating the issues and the law relative to surface water the presiding Judge instructed the jury with regard to an easement by prescription as follows: "Now, there is another thing. There is such a thing as an easement whereby you can get a right—buy a right—to go through a man's land, and you have that right; you have a deed to that. Or if some of your former grantors, persons who owned this land long before you did, had the right to go through there, cut a ditch through there, and the owners of the land through which this ditch goes allow it to stay open there, allow it to be used for twenty years or more, without objection or trouble, for twenty years or more, then an easement is acquired through that land; then it cannot be

17—96

stopped. If it is allowed to stay open for twenty years or more, it cannot be stopped without the party becoming liable for whatever injury it may cause the party off whose land this ditch takes water." No other instruction on that subject was given, as will appear from the charge, which will be reported. This instruction authorized the finding that the easement was established by proof of twenty years' permissive use. This Court has never held that use alone, however long continued, will establish a private easement. On the contrary, it has always held that, to have that effect, the use must be adverse. *Lawton* v. *Rivers,* 2 McC. 445; *Bailey* v. *Gray,* 53 S. C., 514, 31 S. E. 354. The cases of *State* v. *Kendall,* 54 S. C. 192, 32 S. E. 300, and *State* v. *Tyler,* 54 S. C. 295, 32 S. E. 422, do not hold a contrary doctrine. In the former, no such question was made or decided. In the latter, it was assigned as error that the trial Judge charged the jury that the public could acquire the right to travel a road merely by traveling it for twenty years. The exception on that point was overruled on the ground that the Judge had not so charged. After analyzing the charge, the Court said: "Stated, then, briefly, the jury were instructed that a highway arises by prescription from the continuous, uninterrupted, adverse use thereof by the public, under claim of right, for twenty years." In the same case, it was said: "The general instruction that the use must not be permissive, but must be adverse and under claim of right, gave appellant the full benefit of the law applicable to establishing a private way by prescription. Whether the open and uninterrupted use by the public of a neighborhood road as a public road, for twenty years, with the knowledge and acquiescence of the landowner, and with no assertion of opposing right by him, would warrant a presumption that the use was adverse and under claim of right, or would warrant the presumption of a dedication by the landowner, and an acceptance by the public, need not

now be considered or decided, but see *State* v. *Sartor,* 2 Strob. 66, and *State* v. *Floyd,* 3 9 S. C. 25."

The intimation, in the last quotation, that the kind of use there mentioned, running through a period of twenty years, would raise a presumption that it was adverse, or that the way had been dedicated to the public, does not infringe upon the universal rule that, to acquire a way by prescription, the use must be adverse. On the other hand, it implies the existence of that rule; for, if the use need not be adverse, there would be no need of the presumption. The presumption merely supplies, *prima facie,* at least, that which all our cases hold to be necessary to establish such right—to wit, proof that the use was adverse. The presumption shifts the burden upon the party denying the right to prove that the use was permissive. But, as will be readily seen, an instruction that twenty years' use of the kind described will raise a presumption that it was adverse and shift the burden upon the party denying the right to prove that it was permissive is vastly different from an instruction that it establishes the right. Because the presumption may be rebutted by proof that the use was permissive, or by proof of other circumstances which would defeat the easement, notwithstanding such use.

Moreover, we must not overlook the fact that, in each of the cases cited, the claim of an easement in the public—a public road—was involved, and that there is a difference between the *quantum* of proof necessary to establish a public and a private right of way, the former requiring less proof that the latter. In *State* v. *Sartor,* 2 Strob. 60, Judge O'Neall said: "In one respect, I think, there is a great difference as to the evidence from which a dedication to public use may be presumed, and prescription for a private way. In the latter no such right can arise in woodland, without some unequivocal act of adverse right, such as cutting out the road, or repairing it. The reason of that is obvious—a private way is an easement in favor of another, in deroga-

tion of the rights of the owner; and hence is not to arise without clear, unequivocal proof of such facts as will give the right from the owner to the claimant. In the case of a public way, every man holds his land subject to the right of the State to lay out roads over it for public purposes. This being so, if the way be found to exist long enough to presume a dedication, the right to regard it as public, if its other characteristics be found, is made out." See, also, *State* v. *Rodman,* 86 S. C. 158, 68 S. E. 343. But none of our cases hold that a private easement, such as that here claimed, can be established by use, unless it is adverse.

I think the Court erred also in the instruction as to the law applicable to the second ground upon which the plaintiffs claim the right to use the ditch—to wit, that it was what is called a *quasi* easement, which was created by Reynolds, when he owned both tracts, and was still in existence as a continuous and apparent *quasi* easement, when the unity of title was severed. There was testimony to show that the ditch was opened by Reynolds, when he owned both tracts; but it fails to show when the severance took place, and whether the several tracts were conveyed at the same time or at differnt times, and, if at different times, whether the dominant or the servient tract was first conveyed. The order of conveyance may be of controlling influence in determining such a right. Other circumstances being the same. If Reynolds conveyed the tract now owned by the plaintiffs first, their claim to the use of the ditch would rest upon stronger grounds than if he conveyed the other tract first. The rule and the reason for it are thus stated in 10 A. & E. Enc. L. (2d), 420: "According to the established English doctrine, which is supported by some of the later American authorities, if the owner of both the *quasi* dominant and the *quasi* servient tenements conveys the former, reserving the latter, all such continuous and apparent *quasi* easements as are reasonably necessary to the enjoyment of the property granted pass to the grantee, giv-

ing rise to easements by implied grant. If, on the other hand, the *quasi* servient tenement is granted, while the *quasi* dominant tenement is retained, no easement is reserved by · implication, unless it is strictly necessary to the enjoyment of the property retained. These rules are founded on the principle that a grantor shall not derogate from his own grant." In the note, the case of *Elliott* v. *Rhett,* 5 Rich. L. 405, 57 Am. Dec. 750, is cited as sustaining the rule of the text. *Crossland* v. *Rogers,* 32 S. C. 130, 10 S. E. 874, is directly in point. In that case, plaintiff owned land which had been drained by a ditch for over thirty years, and sold part of it. The ditch ran partly through the tract sold and · emptied into another ditch on that tract, whence it was vented into a creek. Defendant having acquired title to the *quasi* servient tract, obstructed the ditch which drained plaintiff's land, and plaintiff sued him for the obstruction, alleging that he had the right to use the ditch on the same grounds that the plaintiffs in this case base their claim. On appeal from judgment of nonsuit, after holding that there was no evidence of adverse use by plaintiff for the time requisite to acquire the right by prescription, the Court said, as to the second ground : "Was there any testimony introduced as to the facts necessary to imply an easement reserved in such a case? What facts are necessary? To this end, Mr. Washburne, in his work on easements, in section 111, discusses this matter fully, referring to many cases decided in the English Courts, as well as the different States, and while there is a want of uniformity in these decisions, we think the better doctrine seems to be that, in order to establish an easement by an implied reservation, where there has been a unity of possession and a subsequent sale of a portion of the land over which the easement is claimed, that said easement must have been apparent, continuous, and necessary at the time of said sale, the term "necessary" meaning that there could be no other reasonable mode of enjoying the dominant tenement without this easement. And it seems

to be less difficult for the grantee of the portion sold to establish the easement than the grantor, for the reason that the grantor ought not to be allowed to derogate from his absolute deed by claiming rights and burdens over the land sold, in the face of his covenants of warranty, even though said burden might have been apparent and continuous at the time. There should be an element of absolute necessity in such cases. See Washburn on Easements, page 60, *et seq.* See, also, our own cases of *Ferguson* v. *Witsell,* 5 Rich. 284, and *Elliott* v. *Rhett,* 5 *Id.* 413, as to the element of necessity. In those cases the question was whether the easement claimed had passed to the grantee."

The foregoing citation shows that the burden was upon plaintiffs to prove at least two things before they could establish the right to use the ditch as an easement of necessity: First, that it was necessary to drain their land; and, second, that it was necessary to use this ditch to do it. In other words—the words of the Court in *Crossland* v. *Royers* —"that there could be no other reasonable mode of enjoying the dominant tenement without this easement."

If we bear in mind the undisputed evidence, that Reynolds opened the ditch while he owned both tracts, that there was a low place in plaintiffs' land, which it was necessary to drain in order to make it arable, and that it had been drained through this ditch, we cannot resist the conclusion that the instruction, complained of in the fourth exception, that "where one owned a piece of land originally drained by a ditch, and sold off a portion through which the ditch drained, and it was necessary to drain that land, the use of the ditch passed with the land," was practically the direction of the verdict for the plaintiffs. But, as there was testimony that plaintiffs' land could be drained in another direction, which was the better and the natural course for the water to go, the issue whether that kind and degree of necessity existed which the cases above cited require to establish such an easement should have been submitted to the jury.

As the testimony fails to disclose when the several parts of the original Reynolds tract were conveyed, it is difficult to understand how the doctrine of title by prescription could have been applied in the case at all, because it was impossible to tell whether there had been twenty years' use of the ditch by plaintiffs and their predecessors in title after the severance of the unity of title and possession which had existed in Reynolds. Of course, no part of the time that the ditch had existed and been in use before the severance could be added to the time that it was used afterwards to make up the twenty years. Yet it is by no means certain that this was not done. At any rate, the language of the instruction which has been quoted above was broad enough to warrant the conclusion by the jury that it might be done. The burden was upon the plaintiffs to prove the facts necessary to establish the right claimed by them, and to make the instruction, which was given at their request, applicable.

In *Polson* v. *Ingram*, 22 S. C. 545, the Court said: "One claiming an easement on the lands of another must prove his right to it clearly. The law is jealous of such claim, and the right cannot be established by intendment or presumption."

For these reasons I think the judgment should be reversed.

MR. JUSTICE FRASER *concurs.*