## BALTZEGER v. CAR. MIDLAND RY. CO.

1. REMEDIES—NUISANCE—SURFACE WATER.—DAMAGES arising from damming up surface water are not actionable, unless accumulation is a nuisance *per se*. *Edwards* v. *R. R. Co.,* 39 S. C., 472, *explained*.

2. A NUISANCE *caused* by damming up surface water in a town is public in its nature.

3. PLEADINGS—DEMURRER—NUISANCE—CAUSE OF ACTION—PRACTICE.— COMPLAINT for damages for nuisance, alleging no damages *special or peculiar* to plaintiff as distinguished from those sustained by the general public, does not state a good cause of action.

Before WATTS, J., Aiken, March, 1898.    Affirmed.

Action by G. Jones Baltzeger *v.* Carolina Midland Railway Co. for damages and to abate a nuisance.    From order sustaining demurrer and dismissing complaint, plaintiff appeals.

*Messrs. G. W. Croft & Son* and *R. L. Gunter,* for appellant.    The former cite: *Nuisances:* 81 A. D., 588; 54 A. D., 347; 3 S. C., 438; 47 A. D., 255; 108 U. S., 317; 24 A. D., 161; 15 A. S. R., 840.    *That the defendant is the owner of the land upon which the nuisance is maintained, is no excuse:* 108 U. S., 317.    *Action may be maintained by one in possession without title:* 68 A. D., 145.    *A party suffering special damages may sue to abate a public nuisance:* 73 A. D., 778; 29 L. R. A., 700; 68 A. D., 121; 69 A. D., 296; 30 S. C., 539; 21 A. D., 89.

*Messrs. Henderson Bros.* and *Rob't. Aldrich,* contra, cite: *Common law rule as to surface water:* 28 S. C., 163. *Neither the repulsion nor the retention of surface water is an actionable injury:* 37 A. D., 768.    *Plaintiff cannot maintain this action because he does not own land upon which trespass has occurred:* 3 S. E. R., 485; 5 Rich., 593.    *Plaintiff must allege some special damage peculiar to himself, but does not:* 9 S. C., 328; 5 Rich., 583; 1 Hill, 367; 49 S. C., 95.

Feb. 23, 1899.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    The appeal herein is from an order sustaining a demurrer to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action.    The complaint is as follows:    I. The first paragraph merely alleges the corporate existence of the defendant.    "II. That the plaintiff is the owner of the following described real estate, to wit: All that lot of land, with the improvements thereon, containing three acres, more or less, situate within the corporate limits of the town of Wagener,* * * which said premises lie west of the railway track of the defendant

in the said town of Wagener, and within a hundred feet
from the defendant's line of railway. That the dwelling
house of the plaintiff is upon said premises, and the same is
now, and has been for several years past, occupied and used
by the plaintiff and his family. III. That near to the plain-
tiff's residence, and running by the same, and across the line
of the defendant's railway track, is a hollow or depression in
the land, in and through and down which the surface water,
in times of rains and floods, has been accustomed by nature,
from time immemorial, to pass and flow through, and
thereby affording a complete passage and drainage for all
surface waters which were collected and entered into said
hollow. IV. That about the year 1886 or 1887, the Black-
ville, Alston and Newberry Railroad Company, a corpora-
tion under the laws of this State, constructed the line of rail-
way now owned and operated by the defendant, and in build-
ing the line of said railway across the said hollow caused a
high embankment to be created, and also dug deep ditches on
the upper and lower sides of said embankment, which said
embankment completely stopped the flow and passage of the
surface water down said hollow, as it was accustomed by na-
ture to flow, and in times of rains and floods caused the said
water to accumulate in a pond on the upper side of said
railway track, and also caused a considerable quantity of
water to accumulate and gather in the said ditch on the
lower side of said railroad track; and the said water, so
collected, remains in said ditches, and in the pond formed on
the upper side of said embankment, for a considerable while
after each rain and flood, and it becomes stagnant and emits
nauseous odors and gases, which poison and pollute the air
in and around the plaintiff's said dwelling house, and renders
the same unhealthy and dangerous to live at, and has within
the last three years caused annoyance, sickness, pains and suf-
fering to the plaintiff, and also to the members of his family,
and has within that period caused the death of one of plain-
tiff's children, who was made sick by the offensive and nau-
seous gases emitted from said stagnant waters. And the

plaintiff alleges that the collection and ponding of such waters, as aforesaid, is a nuisance to him, dangerous to the health of himself and family, and the same ought to be abated. V. The plaintiff further alleges that the Blackville, Alston and Newberry Railroad Company, some five or six years ago, changed its name to the Carolina Midland Railroad Company, and under said last name, the defendant owns and maintains said embankment and ditches across said hollow, and still maintains and continues said nuisance. And the plaintiff further alleges that the said railroad company, when building said road, or at any time since, could have, without much expense, put a culvert under and across said embankment, which would carry off the surface water and remove said nuisance; but that the said railroad company carelessly and negligently built said embankment so as to cause said nuisance, and that the defendant, although requested to so abate the same, have, unmindful of their duty and in wanton disregard of the plaintiff's rights and health, failed to do so, and negligently and carelessly still maintains said nuisance, to the damage of this plaintiff in the sum of $2,000."

The first question which will be considered is whether damages caused by the accumulation of surface water are actionable. In 24 Am. & Eng. Enc., 907, it is said: "A great divergence has arisen in the rules adopted in the various States as to the right of the lower proprietor to obstruct the flow of surface water, and to repel it from his premises, by means of an embankment or other obstruction. Some States have adopted what is known as the civil law rule, which subjects the lower estate to the easement or servitude of receiving the flow of the surface water from the upper estate. Other States, again, have adopted what is known as the common law rule, by virtue of which the lower proprietor may do as he pleases with his land, and may receive, repel or divert surface water flowing thereon, at his pleasure. In one or two States, again, a modified rule has been adopted, under which each case is to

be governed by its circumstances, and the right to obstruct or repel the flow of surface water is to be determined by the reasonableness of the use of the lower estate." The rule of the common law as to surface water is perhaps nowhere more clearly stated than in 24 Am. & Eng. Enc., 917: "Under this rule it is held that the right of the owner of land to occupy and improve it in such a manner and for such purposes as he may see fit, either by changing the surface, or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his land is so situated with reference to that of adjoining owners, that an alteration in the mode of its improvement or occupation in any position of it, will cause water, which may accumulate thereon by rains or snow falling on its surface, or flowing on it from the surface of adjoining lots, either to stand in unusual quantities on the adjacent lands or to pass on to and over it in greater quantities and in other directions than they were accustomed to flow. *Cujus est solum ejus est usque ad coelum,* is regarded as a general rule applicable to the use and enjoyment of real property, and the right of a party to the free and unfettered control of his own land, above, upon and beneath the surface, can not be interfered with or restrained by any consideration of injury to the other land, which may be occasioned by the flow of mere surface water, in consequence of the lawful appropriation of land by its owner to a particular use or mode of enjoyment. Nor is it at all material in the application of this principle of law, whether a party obstructs or changes the direction and flow of surface water, by preventing it from coming within the limits of his land, or by erecting barriers or changing the level of the soil, so as to turn it off in a new course, after it has come within his boundaries. The obstruction of surface water, or an alteration in the flow of it, affords no cause of action in behalf of a person who may suffer loss or detriment therefrom, against one who does no act inconsistent with the due exercise of dominion over his own soil." In a note to the case of *Gray* v. *Williams,* 21 L. R. A., on page

593, the rule of the common law is thus stated: "The gist of the so-called common law rule is that one may do as he pleases with his property regardless of the effect upon surface water. This rule recognizes the right of each proprietor to fight surface water. *Jones* v. *Hanovan,* 55 Mo., 462. And the result is that, if carried to its ultimate conclusion, it simply means that the Courts will recognize no wrong in any action undertaken for the purpose of getting rid of surface water. In other words, no legal right of any kind can be claimed, *jure naturae,* in the flow of surface water, so that neither its detention, diversion nor repulsion is an actionable injury, even though damage ensue. *Bowlsby* v. *Speer,* 31 N. J. L., 351, 86 Am. Dec., 216." The only exception to the rule that surface water being a common enemy, every landowner has the right to deal with it in any such manner as he may see fit, is that it is subject to the general law in regard to nuisances, if its accumulation has become a nuisance *per se,* as for example, whenever it has become dangerous at all times and under all circumstances to life, health or property. If this was not the law, a person could accumulate the surface water upon his premises in a populous town or city, and although the nauseous gases and vapors escaping from it might be deadly to the public generally, it could not be abated even by the public authorities. The allegations of the complaint are not sufficient to show that the alleged accumulation of the surface water was a nuisance, *per se.* It might seem, without explanation, that the case of *Edwards* v. *R. R. Co.,* 39 S. C., 472, is in conflict with the foregoing authorities. In that case the Court said: "The Circuit Judge, in effect, charged the jury that the first question for them to determine was, whether the construction of the sand bank was necessary for the protection of defendant's road bed, and right of way; and if so, then the defendant was not liable. * * * But in view of the express declaration of the law-making power, as embodied in section 2738 of the General Statutes, we feel bound to declare, in the absence of any constitutional provision, statute, or even au-

thoritative decision to the contrary, that the common law rule must still be recognized as controlling here; for that section expressly declares that 'Every part of the common law of England not altered by this act nor inconsistent with the Constitution of this State, and the customs and laws thereof, is hereby continued in full force and virtue within this State, in the same manner as before the passage of this act.' Under the common law rule, surface water is regarded as a common enemy, and every landed proprietor has a right to take any measures necessary to the protection of his own property from its ravages, even if in doing so he throws it back upon a coterminous proprietor to his damage, which the law regards as a case of *damnum absque injuria,* and affording no cause of action." From the foregoing language used in that case, it appears: 1st, that the common law rule was distinctly recognized as controlling in this State; and 2d, that as the *plaintiff* lost the case, there was no error *of which she could complain,* as the charge was really too favorable to her. Under the charge of the presiding Judge, she received the benefit of the intermediate or modified rule hereinbefore mentioned. If the *defendant* had lost the case and had appealed from the charge of the presiding Judge, the Court would have been compelled, following the rule of the common law, to grant a new trial. It will thus be seen that the case of Edwards *v.* R. R. Co., is not in conflict with the common law rule.

But even if the alleged accumulation of the surface water was such as to create a nuisance not *malum in se,* the next question which will be considered is whether it was public or private in its character. In 16 Am. & Eng. Enc., 926, it is said: "Public or common nuisances affect the community at large or some considerable portion of it, such as the inhabitants of a town. * * * A private nuisance affects only one person or a determinate number of persons."

In the note on that page, the following quotation from Wood's Law of Nuisances is made, to wit: "It is not so much a question whether a large number of persons hap-

pen to be annoyed by the act, as whether the act *itself* was such and in such a *place,* as that the natural effect thereof would be to annoy or offend all who came within its sphere." In the same note, the case of *Soltan* v. *DeHeld,* 2 Sim., N. S., 133, is cited, in which the Vice Chancellor says: "To constitute a public nuisance the thing must be such as in its nature or its consequences, is a nuisance, an injury or a damage to all persons who come within the sphere of its operations, though it may be so in a greater degree to some than it is to others." On the next page of the same volume it is said: "A nuisance, to be a public nuisance, must be in a public place, or where the public frequently congregate, or where members of the public are likely to come within the range of its influence; for if the act or use of property be in a remote and unfrequented locality, it will not, unless *malum in se,* be a public nuisance." On page 931 of the same volume it is said: "In order to constitute a public nuisance, the act or use of property must be an annoyance common to the public generally. The test is not the number of persons annoyed, but the possibility of annoyance to the public by invasion of its rights;" and in a note on same page the case of Soltan *v.* DeHeld is again cited, as holding that "The test is not the number of persons annoyed, but the fact that it is in a public place and annoying to all who come within its sphere." The complaint alleges that the plaintiff's lot, upon which is his dwelling, is in the corporate limits of the town of Wagener, and within one hundred feet of defendant's line of railroad; and there is nothing in the complaint showing that the other inhabitants of the town of Wagener are not as susceptible to the injurious effects of the alleged nuisance as the plaintiff. Under these circumstances, and tested by the foregoing authorities, the alleged nuisance could only be regarded as public in its nature; and having reached this conclusion, the next question that will be determined is whether the allegations of the complaint show that the plaintiff sustained damage peculiar to himself. The rule upon this subject is stated in *Steamboat Co.* v. *R. R. Co.,* 30 S. C., 539 (af-

firmed in *Steamboat Co.* v. *R. R. Co.,* 46 S. C., 327), as follows: "That the injury must be particular—as some of the cases express it, 'special or peculiar,' must result directly from the obstruction, and not as a secondary consequence thereof, and must differ in kind and not merely in degree or extent from that which the general public sustains." The plaintiff relies upon the allegations contained in the 4th paragraph of his complaint to show that his injury was special or peculiar. One of the requirements of the rule is that the damages must differ *in kind,* as well as degree, from those which, it may be reasonably expected, will be sustained by the public generally. The allegations of the complaint show that the causes which led to the plaintiff's injury might reasonably be expected to affect others in the neighborhood, and, therefore, his injury was not special. The appellant's attorneys cited sections 1264 and 1272 of the Rev. Stat., which are as follows: *1264.* "No person shall be permitted or allowed to make or keep up any dams or banks to stop the course of any waters, so as to overflow the lands of another person, without the consent of such person first had and obtained; nor shall any person be permitted or allowed to let off any reserved water to injure the crops upon the grounds of other persons." *1272.* "Nothing contained herein shall be construed to authorize any person or persons to keep water at any time on lands other than his, her or their own." There are no allegations in the complaint showing that these sections have any application to this case.

The respondent's attorneys gave notice of additional grounds upon which they would ask that the judgment of the Circuit Court be sustained, but the conclusions hereinbefore stated render the consideration of the additional grounds unnecessary.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.