### 11178

### RIVENBARK v. A. C. L. R. CO.

#### (117 S. E., 206)

1. WATERS AND WATER COURSES—DUTY WITH RESPECT TO DRAINAGE OF
   SURFACE WATER SAME AS DUTY OF ANY OTHER ADJACENT LAND-
   OWNER.—The duty owned by a railroad to an upper adjacent land-
   owner with respect to the maintenance of a ditch for the drainage
   of surface water on its premises is the same duty that would have
   been owed by any other lower adjacent landowner.

2. WATERS AND WATER COURSES—RAILROAD STOPPING DRAINAGE DITCH
   ON OWN LAND NOT LIABLE FOR FLOWING LANDS OF ADJOINING
   OWNER.—A railroad, that stops a drainage ditch on its own land
   for the purpose of storing cross-ties thereon, is not liable to the
   upper landowner for damages caused by the resulting accumulation
   of surface water on the land of adjoining owner, in the absence of
   a showing that a nuisance was created.

3. WATERS AND WATER COURSES—PRESENCE OF CATFISH HELD NOT TO
   CONCLUSIVELY ESTABLISH THAT DITCH WAS NATURAL WATER COURSE.
   —Where railroad stopped a drainage ditch on its land, and thereby
   caused water to accumulate on the land of the upper adjoining
   owner, the presence of catfish in this water *held* not to conclusively
   show that the ditch was a natural water course.

4. APPEAL AND ERROR—ISSUES NOT RAISED BELOW NOT PROPERLY BEFORE
   SUPREME COURT.—Issues which were not raised in or passed on by
   the Court below are not properly before the Supreme Court.

Before MEMMINGER, J., Beaufort, September, 1922. Reversed and dismissed.

Action by T. J. Rivenbark against Atlantic Coast Line Railway Co. Judgment for plaintiff in the Magistrate's Court, affirmed by the Circuit Court and defendant appeals.

*Mr. W. J. Thomas,* for appellant, cites: *Allegation of obstruction of surface water states no cause of action:* 97 S. C., 233; 87 S. C., 415; 83 S. C., 314; 61 S. C., 548; 54 S. C., 242; 39 S. C., 472; 21 L. R. A., 593.

*Mr. George W. Beckett* and *John P. Wise,* for respondent, cite: *Artificial ditch long continued may become a natural water course:* 50 L. R. A., 836; 16 L. R. A. (N. S.), 280. *Gould on waters,* Secs., 41, 263; 64 Vt. 491;

84 Cal. 233; 28 A. S. R., 727. *Farham Waters* 1559; 6. L. R. A. (N. S.), 161; 142 Ind., 604; 84 Cal., 233. *Whether it was a drain was question of fact for the Magistrate:* 60 S. C., 254; 79 S. C., 356; 75 S. C., 82. *Obstruction was actionable as a nuisance:* 27 R. A. L., 1100; 20 R. C. L., 402–3; 27 A. S. R., 710; 75 S. C. 82.

April 10, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Action for damages in a Magistrate's Court, based upon the following complaint:

"(1) That the plaintiff is a resident of the Town of Hardeeville, in said county and the defendant is a railway corporation having a line of railway passing through, and an office and agent in, the said county and State.

"(2) That plaintiff lives in the town of Hardeeville, on the line of the defendant's railroad, and is, and was at the time of the acts herein complained of, in possession of a garden, which he planted with vegetables in the spring of the year 1921.

"(3) That the natural drainage of the ground where the plaintiff planted his vegetables is on, towards, upon, and across the railroad right of way, but the defendant built and maintains an embankment on which to operate its trains, which embankment stops the natural drainage, and the said railway company, in order to carry away the surface water which naturally would flow over its right of way, constructed a ditch to lead off the surface water, which otherwise would be dammed up by said embankment, and would overflow and submerge the lands of the plaintiff on which he planted his said vegetable garden.

"(4) That the defendant, in utter disregard of the rights of the plaintiff and in violation of its duty, allowed its drainage ditch to become stopped up and obstructed, and, although requested by the plaintiff to do so, refused and neglected to

clean out and maintain the said ditch, thereby causing, in
the months of June and July, 1921, the surface water to
accumulate and overflow and submerge and flood the plain-
tiff's land and destroy the plaintiff's crops of collards, po-
tatoes, peas, and strawberry plants, and other plants and
vegetables, and converting plaintiff's land into a fish pond
wherein catfish disported themselves, to plaintiff's damage
in the sum of one hundred dollars."

The defendant demurred to this complaint upon the
ground that it failed to state a cause of action, in that it
showed upon its face that it was "an action brought against
the defendant for neglect to clean out and maintain a ditch
and for backing surface water on the land of the plaintiff."
The demurrer was overruled.

Plaintiff testified:

"The natural drainage is across the railroad track. The
right of way ditch runs within 4 or 5 feet of his garden.
The town ditch drains into the railroad ditch. The rail-
road ditch was stopped up with cross-ties, which prevented
the flow of water. I requested the ditch to be opened.
* * * Rainwater drowned my garden. The nearest liv-
ing stream is about three-quarters of a mile. The water
that drowned my garden did not come from any stream of
water, but flowed in when it rained. If the railroad ditch
had not been stopped up, the water would not have damaged
me. It was flooded generally around when it rained.
There was not water there until a rainy time."

The Magistrate found the facts substantially in accord-
ance with the foregoing testimony, held that the conduct of
the defendant in allowing the drainage ditch to become
stopped up with cross-ties constituted actionable negligence,
and rendered judgment for plaintiff in the sum of $100.
The Circuit Judge affirmed the judgment of the Magistrate,
and the defendant appeals upon the exceptions, which allege
in substance that neither the facts stated in the complaint nor
the facts found by the Magistrate and approved by the Cir-

cuit Judge are sufficient to support the plaintiff's recovery.
The legal rights and duties of a railroad company,
1, 2 in possession of real estate held and used by virtue
of such title as gives it dominion and control there-
of for the purpose of carrying on a lawful business, differ
in no essential particular from the rights and duties of any
other landed proprietor in the same circumstances or under
like conditions. See *Edwards v. Ry. Co.*, 39 S. C., 472;
18 S. E., 58; 22 L. R. A., 246; 39 Am. St. Rep., 746. So
here any duty owned by the railroad to the plaintiff with
respect to the use and maintenance of a ditch for the drainage
of surface water on its premises is in contemplation of
law the same duty that would have been owed by any other
adjacent owner of the lower land, and is precisely the same
duty that the plaintiff would have owed the railroad, if the
situation of the parties had been reveresed. In that view, a
hypothetical statement of the case, with the positions of
the parties reversed, may tend to clarify the issue. Suppose
the plaintiff, the owner of the garden, were the lower pro-
prietor, instead of the railroad, and had seen fit to fill up a
drainage ditch, or allow it to become obstructed, or to take
out tile drains, which he had previously maintained in good
condition in his garden, as a result of which surface water
was backed upon the railroad's premises, to the injury of
the track and roadbed; would the railroad have had a cause
of action for the consequential damages against the plain-
tiff? Clearly not, we think, under the common-law rule
as to surface water prevailing in this state and applied by
this Court in numerous decisions.

The case at bar is closely assimilated to and is clearly
ruled by the principles of law recognized and applied by this
Court in the following cases: *Edwards v. Railway Co.*,
39 S. C., 472; 18 S. E., 58; 22 L. R. A., 246; 39 Am. St.
Rep., 746. *Baltzeger v. Railway Co.*, 54 S. C., 242; 32 S.
E., 358; 71 Am. St. Rep., 789. *Lawton v. Railroad Co.*,
61 S. C., 548; 39 S. E., 752. *Johnson v. Railway Co.*,

71 S. C., 241; 50 S. E., 775; 110 Am. St. Rep., 572. *Touchberry v. Railroad Co.*, 83 S. C., 314; 65 S. E., 343. *Id.*, 87 S. C., 415; 69 S. E., 877. *Cannon v. Railroad Co.*, 97 S. C., 233; 81 S. E., 476. In the *Touchberry Case*, 87 S. C.; at page 423; 69 S. E., at page 878, the present Chief Justice thus clearly and fully states the rule, with the recognized exceptions, announced and applied in the foregoing decisions, as follows:

"In the case of *Lawton v. Railway*, 61 S. C., 548; 39 S. E., 752, that great jurist, Mr. Chief Justice McIver thus states the rule in this state, as to surface water:' 'The obstruction of the flow of surface water, and the waters of a natural water course, are two distinct and very different things, and are attended by entirely different consequences. The former is not actionable while the latter, if resulting in damage to an adjoining land proprietor is actionable. In this state, at least, it is well settled that the common-law rule prevails, and that surface water is regarded as a common enemy, which each landed proprietor may keep off his own premises, even though, by so doing, he may throw or keep it on his neighbors' premises, (citing *Edwards v. Railway*, 39 S. C., 472; 18 S. E., 58; 22 L. R. A., 246, and *Baltzeger v. Railway*, 54 S. Ct., 242; 32 S. E., 358). In a note to the case of *Gray v. Williams*, 21 L. R. A., on page 593, the rule of the common-law is thus stated: 'The gist of so-called common-law rule is that one may do as he pleases with his property, regardless of the effect upon surface water. This rule recognizes the right of each proprietor to fight surface water. *Jones v. Hanover*, 55 Mo. 462. And the result is that, if carried to its ultimate conclusion, it simply means that the Courts will recognize no wrong in any action undertaken for the purpose of getting rid of surface water, so that neither its detention, diversion, nor repulsion is an actionable injury, even though damage ensue. *Bowlsby v. Spear*, 31 N. J. L. 351, 86 Am. Dec., 216.' The foregoing language is quoted with approval in

*Baltzeger v. Railway,* 54 S. C., 242; 32 S. E., 358. There are only two exceptions to the rule that surface water, being a common enemy, every landowner may use such means as he may see fit in dealing with it: (1) 'It is subject to the general law in regard to nuisances, if its accumulation has become a nuisance *per se,* as, for example,, whether it has become dangerous at all times, and under all circumstances, to life, health, or property.' *Baltzeger v. Railway,* 54 S. C., 242; 32 S. E., 358; and (2) it is an actionable injury, for a person to collect surface water, into an artificial channel, and cast it on another's land, in concentrated form. *Brandenburg v. Zeigler,* 62 S. C., 18; 39 S. E., 790; 55 L. R. A., 414, and *Cain v. Railway,* 62 S. C., 25; 39 S. E., 792. There are expressions in the case of *Edwards v. Railway,* 39 S. C., 472, 18 S. E., 58, which seemingly recognize the principle that the right of a landed proprietor to deal with surface water is dependent upon the absence of negligence on his part; but the language of the Court in *Baltzeger v. Railway,* 54 S. C., 242; 32 S. E., 358, explanatory of the doctrine announced in the *Edwards Case,* shows that a person dealing with surface water on his own land, is not bound to exercise reasonable care, with regard to the rights of other landowners."

If the defendant owed no duty to drain surface water from its right of way for the benefit of the upper proprietor, the owner of the garden, the stopping of its drainage ditch by the use of its premises for the legitimate purpose of storing cross-ties thereon could not be imputed to it as negligence, any more than could the construction of an embankment across the ditch for the purposes of a sidetrack. Neither the allegations of the complaint nor the facts adduced in evidence bring the case within the exceptions noted as to a nuisance, or as to casting water through an artificial channel in concentrated form upon the lands of another. See application of the latter exception in the recent case of *Faust v. Richland County,* 117 S. C., 251; 109 S. E., 151.

Respondent argues that the finding of the Magistrate, affirmed by the Circuit Judge, was tantamount to a finding of fact that the drainage ditch on the right of way was a natural water course and not a mere artificial channel for the drainage of surface water. The complaint alleges that the ditch was constructed "to carry away the surface water which naturally would flow over its right of way," etc., and that the obstruction of the ditch caused "the surface water to accumulate and oveflow  *  *  *  the plaintiff's land," etc. The evidence tends to sustain rather than to impeach the correctness of that diagnosis of the character of the water, and clearly precludes the inference that the channel "constructed" for its drainage was a natural water course. See *Lawton v. Railway Co.*, 61 S. C., 548; 39 S. E., 752.

In this connection, the plaintiff's statement that cat-fish disported themselves in his garden is interesting and doubtless true. But in view of the well-known ability of this genus of fish to enjoy life, liberty, and the pursuit of happiness in any ordinary surface water pond, and of the well-establised habit of certain species of the family of traveling long distances over dry land from puddle to pond, we incline to the opinion that the presence of the catfish did not conclusively establish that defendant's ditch was a natural water course. The writer regrets that he is unable personally to vouch for the foregoing natural-istic data or to buttress same with an opposite opinion from the decisions of this Court, and therefore feels constrained to refer the legal student of piscatorial instincts and inquir-ing mind to a more or less illuminating article on the sub-ject of catfish in the Ency. Brit. (11th Ed.), Vol. V, p. 512.

The further contentions that the judgment should be upheld on the ground that the railroad company was estopped to deny plaintiff's right to drainage through the ditch, or on the ground that plaintiff had ac-quired a prescriptive right to the use of the ditch on the

railroad's premises, are likewise untenable. No such issues were raised in or passed on by the Courts below, and the points thereto directed are not properly before this Court. But, if they were, the complaint, does not assert such right, and we find nothing in the evidence tending to establsh that the plaintiff had acquired through estoppel or by prescription an easement to drain surface water through the defendant's ditch. See 27 R. C. L., 1161, § 84. ' There is no suggestion in the evidence of such adverse use by the plaintiff as is necessary to create a prescriptive right or interest in the real property of another.

The judgment is reversed and the complaint dismissed. Reversed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and COTHRAN concur.

MR. JUSTICE FRASER: I must dissent.

The majority opinion correctly states the Law up to the case of the *School District v. Marion County,* 114 S. C., 383; 103 S. E., 767. The Court *en banc* in *Faust v. Richland County,* 117 S. C., 251; 109 S. E., 151, distinctly allows damages for the obstruction of surface water, and I feel bound by the decision in the Faust Case.