### DEASON v. SOUTHERN RAILWAY COMPANY

(140 S. E., 575)

1. WATERS AND WATER COURSES—LANDOWNER MAY DEAL WITH SURFACE WATER, UNLESS ACCUMULATION CONSTITUTES NUISANCE.—Every landowner has right to deal with surface water in any such manner as he may see fit, except in case accumulation becomes nuisance *per se* as becoming dangerous to life, health, or property.

2. WATERS AND WATER COURSES—LANDOWNER CANNOT BACK SURFACE WATER ON ANOTHER TO CREATE NUISANCE.—Surface water being common enemy, landowner has right to protect himself therefrom, but cannot back it on another to create a nuisance.

3. NUISANCE—"NUISANCE" IS ANYTHING THAT UNLAWFULLY WORKS INCONVENIENCE OR DAMAGE TO OTHERS FROM UNREASONABLE OR UNLAWFUL USE OF PROPERTY.—"Nuisance" is anything that unlawfully works hurt, inconvenience, or damage to another arising from unreasonable, unwarrantable, or unlawful use of property.

4. NUISANCE—"PRIVATE NUISANCE" IS ANYTHING HURTING OR ANNOYING LANDS, TENEMENTS, OR HEREDITAMENTS OF PERSONS.—"Private nuisance" is anything done to hurt or annoyance of lands, tenements, or hereditaments of another, producing damage to but one or two persons, and not to the public.

5. NUISANCE—"MIXED NUISANCE" PRODUCES INJURY TO PUBLIC AT LARGE, WITH SOME SPECIAL DAMAGE.—A "mixed nuisance" is one which, while producing injury to public at large, does some special damage to individual or class of individuals.

6. NUISANCE—EVERY CONTINUANCE OF NUISANCE FORMS SUBJECT-MATTER OF NEW ACTION.—Every continuance of nuisance or recurrence of injury is additional nuisance, forming in itself subject-matter of a new action.

7. WATERS AND WATER COURSES—ALLEGATION AS TO EMBANKMENT AND WATER COURSES HELD TO COVER OTHER WAYS OF PONDING WATER IN ADDITION TO OBSTRUCTING DITCH.—Allegations, in action for damage for preventing flow of water from pond on plaintiff's property, as to embankment and water courses, *held* broad enough to cover

other ways of ponding waters, in addition to obstructing ditch which was alleged to have been stopped up.

8. NEGLIGENCE—PROOF OF ONE SPECIFICATION OF NEGLIGENCE WARRANTS VERDICT.—Pleadings must be construed in aid of substantial justice, and proof of one specification and wantonness entitles plaintiff to verdict, if case has been made out.

9. WATERS AND WATER COURSES—EASEMENT FOR DRAINAGE OF SURFACE WATER CAN BE CREATED ONLY BY ACTUAL, ADVERSE, PEACEFUL, UN-INTERRUPTED USE FOR PRESCRIPTIVE PERIOD.—Easement may be created by prescription, and is applicable to right of drainage of surface water through lands of another, which right can be created only by actual use, adverse, peaceful, uninterrupted, and continued for prescriptive period.

10. WATERS AND WATER COURSES—WHETHER CREATING EMBANKMENT PREVENTING FLOW OF SURFACE WATER AND STOPPING DITCH CREATED NUISANCE HELD FOR JURY.—In action for damages for obstructing flow of water from pond on plaintiff's property, question of whether constructing embankment and stopping ditch through which water was drained created a nuisance, which had become dangerous at all times and under all circumstances to life, health, or property, *held* for jury.

Before WILSON, J., Hampton, February, 1925.    Affirmed.

Action by Catherine M. Deason against the Southern Railway Company.   Judgment for plaintiff, and defendant appeals.

The grounds of motions for a directed verdict and the exceptions on part of defendant are as follows:

A. Water is surface water.

B. Ditch was stopped in the year 1900, when land belonged to T. A. Causey, and it has remained in same condition ever since.

C. Six or seven years later, 1906 or 1907, Mrs. Deason moved to and established her home where she now is, east of the pond.

NOTE: On right of owner of lower tenement as against the rights of upper landowner to obstruct surface water in a natural drainage channel, see annotation in 22 L. R. A. (N. S.), 789; L. R. A., 1917-A, 517; 27 R. C. L., 1143; 5 R. C. L. Supp., 1495; 6 R. C. L. Supp., 1690.

"Nuisance" defined, see 20 R. C. L., 380; 1 R. C. L. Supp., 1061; 4 R. C. L. Supp., 1357; 6 R. C. L. Supp., 1208.

D. Eight or ten years later, according to Mr. Deason, he made complaint about the pond. We say we never heard of the matter until 1922 or 1923.

E. Pond is a wet weather pond. That is, it has water in it during heavy rains, and is dry in dry weather. It stays dry for months at a time, even so that grass grows 2 or 3 feet high all over it.

F. It is not dangerous at all times and under all circumstances. It is not a nuisance per se.

## EXCEPTIONS

(1) It was error for the presiding judge to refuse defendant's motion, made at the close of all the testimony, and upon the following ground: "All of the proof in the case shows that the water complained of was surface water, and there is a total absence of proof of any actionable negligence on the part of defendant that would support any cause of action alleged by plaintiff"; the error being:

(a) The entire proof on the point, which was undisputed, showed that the water complained of was surface water, and that it was an old ditch, and not a natural water course, that was alleged to have been stopped up.

(b) The entire, undisputed proof on the point showed that said old ditch was alleged to have been stopped up nearly ten years before plaintiff became the owner of the land, when plaintiff's father and grantor was the owner thereof, and that the same has remained closed ever since.

(c) That plaintiff, deliberately, and with notice and knowledge of existing conditions, nearly ten years after defendant had purchased its right of way and erected its said embankment, went into possession of land, and erected her residence just east of, and very near to, a wet weather pond that has always been wet in wet weather and dry in dry weather, since the earliest recollection of the community's oldest citizens.

(d) That the undisputed proof shows defendant's alleged acts, set out in the complaint, that of obstructing surface water, have never, at any time, as far as plaintiff and her premises and property are concerned, created a nuisance per se, nor have they collected surface water in large amount and cast it in concentrated form, through an artificial channel, or otherwise, on plaintiff's land so as to wash away and destroy it, or otherwise take it.

(2) It was error for the presiding Judge to charge the jury as follows: "Now, gentlemen, a good deal has been said to you about surface water, and you have heard a great many of these decisions read, sometimes some of them absolutely are confusing, but, as I understand the rule of this State, the Court has decided that surface water is a common enemy, surface water is a common enemy; and, while you have the right to protect yourself from surface water, you can protect your own self, but you cannot back it on another man there at all to create a nuisance, you cannot do that. I understand that's decided in half of the cases you mentioned, and you can back the water and protect yourself, and you cannot back it on another person's land, another's land, and in such a way as to create a nuisance and to destroy his property"; the error being that said charge embodied an incorrect proposition of law, in that the only exceptions to the common-law rule, that a proprietor has a right to handle surface water in any way that he sees fit, are: (1) It is subject to the general law in regard to nuisances, if its accumulation has become a nuisance *per se,* as, for example, when it has become dangerous at all times, and under all circumstances, to life, health or property; and (2) it is an actionable injury, for a person to collect surface water into an artificial channel, and cast it on another's land, in concentrated form, and his Honor's charge did not so limit a landowner's right to fight surface water.

(3) It was error for the presiding Judge to charge the jury as follows: "Now, in this case, whether a nuisance has been created, or whether all that property has been destroyed and made worthless, and that's a matter entirely for you to determine whether that's been the case or not"; the error being that said charge did not contain a correct proposition of law, and further, the positive, undisputed, proof in the case showed that no nuisance *per se* had been created and there was a total absence of proof to the effect that plaintiff's property had been destroyed by collecting water into an artificial channel and casting on plaintiff's land in concentrated form, or had been destroyed in any other way.

*Messrs. Frank G. Tompkins* and *J. W. Manuel,* for appellant, cite: *Surface waters regarded as common enemy:* 39 S. E., 752; Id., 790; 81 S. E., 476; 117 S. E., 206; 118 S. E., 923; 69 S. E., 877. *Actionable injury to collect surface waters into an artificial channel and cast them on another's land:* 221 U. S., 636; 109 S. E., 151. *Same, where nuisance created:* 54 S. C., 242. *Right to maintain a private nuisance may be acquired by prescription:* 29 Cyc., 1206; 115 Ind., 22; 42 Mich., 550; 128 Mo. App., 96; 159 Mo. App., 589. *Same, does not hold true in case of public nuisance:* 3 S. C., 449.

*Mr. Randolph Murdaugh,* for respondent, cites: *Where one handles surface waters in such a manner as to create a nuisance liable for damages:* 61 S. C., 548; 117 S. C., 251. *Cases distinguished:* 124 S. C., 136; 61 S. C., 548. *Where objecting party failed to request fuller statement of law cannot later complain:* 120 S. C., 223; 121 S. C., 426.

October 31, 1927.

The opinion of the Court was delivered by MR. ACTING JUSTICE C. J. RAMAGE.

The following was prepared as a dissent from the opinion of Mr. Justice Cothran, but as Justices Blease and Stabler concur in the views therein expressed, the opinion becomes

the judgment of the Court, which is that the judgment of the Circuit Court be affirmed.

I cannot agree with the opinion of Mr. Justice Cothran that the judgment of the lower Court ought to be reversed; on the contrary, I think that it ought to be affirmed for the reasons which follow:

This is an action brought by respondent against the appellant, for the purpose of recovering damages caused by the acts on the part of the defendant in preventing the flow of water from a pond on plaintiff's property, by the erection of an embankment without adequate provision for drainage; the action being based upon the grounds that defendant had created and maintained a nuisance, and that the said acts of the defendant amounted to the taking of her property without due process of law, and without just compensation being first made. The answer was a general denial. At the trial, the defendant moved for a directed verdict, which was refused. The grounds of the motion and the exceptions on the part of the defendant will be set out in the report of the case. The jury found a verdict for the plaintiff in the sum of $500.

I think that this case is ruled by the principles laid down by that acute legal mind, the late Chief Justice Gary, in *Baltzeger v. Railway,* 54 S. C., 242; 32 S. E., 358; 71 Am. St. Rep., 789:

"The only exception to the rule that surface water being a common enemy, every landowner has the right to deal with it in any such manner as he may see fit, is that it is *subject to the general law in regard to nuisances, if its accumulation has become a nuisance per se, as for example, whenever it has become dangerous at all times and under all circumstances to life, health or property."* (Italics added).

Judge Wilson charged the jury as follows on the point really at issue in this case:

"*   *   *   Surface water is a common enemy; and,

while you have the right to protect yourself from surface water, you can protect yourself, but you cannot back it on another there at all to create a nuisance, you cannot do that. I understand that's decided in half the cases you mentioned, and you can back the water and protect yourself; and you cannot back it on another person's land, on another's land, and in such a way as to create a nuisance and destroy his property."

It would be hard to find a clearer or fairer statement of the law than that, and it is supported by the authorities, but, even if no Court had ever decided such a principle, it carries on its face its own best commendation.

These principles were recognized in *Lawton v. Railway,* 61 S. C., 548; 39 S. E., 752, in which case, however, the allegations of the complaint were not broad enough to cover this principle; also in the following other cases: *Branden-berg v. Zeigler,* 62 S. C., 18; 39 S. E., 790; 55 L. R. A., 414; 89 Am. St. Rep., 887; *Cain v. Railway,* 62 S. C., 25; 39 S. E., 792; *Hopkins v. Clemson College,* 221 U. S., 636; 31 S. Ct., 654; 55 L. Ed., 890; 35 L. R. A. (N. S.), 243; and *Faust v. Richland County,* 117 S. C.. 251; 109 S. E., 151.

Indeed, we find defendant in its exceptions also agreeing that this is a correct proposition of law, but denying its application to the case at bar.

"Nuisance" is thus defined by Bouvier:

3, 6   "Anything that unlawfully worketh hurt, inconvenience or damage. 3 Bla. Com. 5; 216; Cooley, Torts, 670. That class of wrongs that arises from the unreasonable, unwarrantable, or unlawful use by a person of his own property, either real or personal. * * * A private nuisance is anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another. It produces damage to but one or two persons, and cannot be said to be public. * * * If a thing is calculated to interfere with the com-

fortable enjoyment of a man's house, it is a nuisance. * * * Every citizen holds his property subject to the implied obligation that he will use it in such a way as not to prevent others from enjoying the use of their property. * * * A mixed nuisance is one which, while producing injury to the public at large, does some special damage to some individual or class of individuals (Wood, Nuisance, 35). * * * Keeping hogs or other animals so as to incommode his neighbor and render the air unwholesome. * * * The remedies are by an action for the damage done by the owner in the case of a private nuisance, * * * or by any party suffering special damage in the case of a public nuisance. * * * Every continuance of a nuisance or recurrence of the injury is an additional nuisance forming in itself the subject-matter of a new action. *Sloggy v. Dilworth,* 38 Minn., 179 [36 N. W., 451], 8 Am. St. Rep., 656." 3 Bouvier, Law Dictionary (1914), p. 2379.

We quote the following from the opinion of Mr. Justice Cothran in this case:

"The right of the plaintiff to recover *damages* for the continued obstruction of the ditch and to require its removal necessarily depends upon her right to open a ditch from the pond and discharge its water upon the railroad company's right of way, a lower proprietor."

In the complaint in this case in addition to alleging the stopping up of a *ditch,* the plaintiff also alleged the erection of an *embankment.* All through the complaint, the allegation of the erection of the embankment is always made in addition of the *stopping up of the ditch.* In the fifth paragraph of the complaint we find:

"Still maintains said *embankment* of earth *and* keeps said ditches and water courses filled in to the present and continuous damage of this plaintiff."

In paragraph 6 we find:

"That the defendant herein, by erecting said *embankment* and filling in and stopping up the above-mentioned ditches or water courses, has built a dam which prevents the natural flow of the water which had theretofore been drained off the plaintiff's land through said ditches and water courses, so that said water has been, and is now, backed up and accumulated on the lands above described," etc.

In our judgment, the allegations as to *embankment and water courses* are broad enough to cover other ways of ponding the water in addition to the *obstruction of the ditch mentioned* in Justice Cothran's opinion. The Code requires the construction of pleadings in aid of substantial justice, and it is the rule that the proof of *one* specification of negligence and wantonness will entitle plaintiff to a verdict, if the jury sees that a case has been made out.

"A railroad, that stops a drainage ditch on its own land for the purpose of storing cross-ties thereon, is not liable to the upper landowner for damages caused by the resulting accumulation of surface water on the land of adjoining owner, *in the absence of a showing that a nuisance was created."* *Rivenbark v. A. C. L. R. Co.,* 124 S. C., 136; 117 S. E., 206.

The case at bar is a case where there was evidence sufficient to go to the jury on the question of whether or not a nuisance was shown to have been caused by the embankment and filling up of the ditch. The question is, not whether the plaintiff had a right to open the ditch in the first instance, but whether or not the defendant had the right *to close the ditch and raise the embankment as alleged in the complaint.*

"The well-settled rule that an easement may be created by prescription, or, more properly speaking under the modern doctrine by presumption, applies to the right of drainage of surface waters through the lands of another. But the right to run a drain through another's land can be

created by actual use only where such use has been adverse, peaceable, uninterrupted, and continued for the prescriptive period." 27 Ruling Case Law, 1162.

No good could come of going over the testimony, but I am satisfied that there was enough testimony to warrant a reasonable jury in finding the verdict that was found under the pleadings and law of this case. It is clear from the testimony that the ditch had been there longer than the prescriptive period, and it was for the jury to say whether or not defendant had the right to raise the embankment, stop up the ditch, and create a nuisance, and whether or not a nuisance was created and maintained. The question whether or not the nuisance "had become dangerous at all times and under all circumstances to life, health, or property" was for the jury.

The liability and probability of the ponds overflowing at every rain, and of drying up and creating mosquitoes during every dry spell, might, or might not, make the place a source of perpetual danger to life, health, and property, as the jury might view the testimony and circumstances. That was peculiarly a question for the jury, and there was a sufficient latitude in the pleadings and testimony to make a jury question on the matter of a continuing nuisance.

As an authority for the right of the plaintiff to maintain this action, I simply refer to 20 Ruling Case Law, 465, 466, 467, et seq.

For these reasons, and for other reasons set out by respondent's attorney in his "Points and Authorities," I think the judgment of the lower Court ought to be affirmed.

The majority of the Court having concurred in this opinion, the judgment below is affirmed.

MESSRS. JUSTICES BLEASE and STABLER concur.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE COTHRAN dissent.

ON PETITION FOR REHEARING

*Per Curiam.*—Petition is hereby dismissed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and STABLER and ACTING ASSOCIATE JUSTICE RAMAGE concur.

MR. JUSTICE COTHRAN (dissenting): From dismissal of petition. I regard this as an extremely important case; that is my excuse for again going into its merits.

In the event that the Court should deny the petition for a rehearing, I wish to withdraw the dissenting opinion heretofore filed by me, and to substitute this opinion therefor, and as a dissent to the order denying a rehearing.

With great respect I think that Mr. Acting Justice Ramage has, in the leading opinion, entirely misconceived the controlling considerations in the case.

In the leading opinion the action is treated as if the plaintiff were the owner and in possession of the land in question at the time of the alleged trespass. Such is not the case, as will be seen. The action is for damages alleged to have resulted from the obstruction of a ditch, which, *at a time prior to the acquisition of title to the land by the plaintiff,* led from one wet weather pond to another, from the latter of which another ditch carried the water to a water course. The obstruction of the flow of water through the ditch first referred to was caused by the construction of a fill or embankment by the railroad company, which supported its track, long before the plaintiff acquired to the premises.

The case was tried before his Honor Judge Wilson, Circuit Judge, and a jury at February term, 1925, and resulted in a verdict of $500 in favor of the plaintiff. The defendant has appealed from the judgment entered upon the verdict upon grounds of error in refusing motion for a directed verdict and of certain errors in the Judge's charge.

It appears that the construction of the railroad was projected about the year 1900, at which time the land in question belonged to the plaintiff's father, Thomas A. Causey, and that a right of way of "150 or 200 feet" in width was acquired by the railroad company over this land from him. At that time, and for many years prior thereto, Causey was, and had been, maintaining a ditch which carried the water from the upper wet weather pond to the other. Both ponds and the ditch were wholly upon Causey's land, the length of the ditch, the distance between the two ponds, being several hundred yards. The railroad was constructed about midway between these two ponds, upon a fill, some 4 or 5 feet high, crossing the ditch, and totally obstructing the flow of water in the ditch, thus preventing the drainage of the upper pond, and raising the height of the water therein in case of rainy weather. The plaintiff acquired title to the land *in 1906 or 1907 by deed from her father*. The ditch has been obstructed ever since the railroad was constructed in 1900.

As Thomas A. Causey owned the land at the time the railroad company constructed the embankment and obstructed the flow of water through the ditch leading from the upper pond to the lower, which embankment was constructed upon the right of way which he had granted to the railroad company, it seems pertinent to inquire what rights of Causey were invaded by such construction, and what remedy was vested in him.

If Causey had any cause of action at all, it must have been for damages resulting either from the negligent construction of the embankment or from the throwing back of surface water upon his land or from the creation of a nuisance. It will be conclusively presumed that his grant conveyed away all claim for damages incident to the construction of the railroad *in a reasonably proper manner*. It, of course, did

not cover damages resulting from a negligent construction or from the creation of a nuisance.

In the case of *Wallace v. R. Co.,* 34 S. C., 62; 12 S. E., 815, the plaintiff, who had granted to the railroad company a right of way over a large body of land, through which a certain stream flowed, brought an action for damages and injunction against the railroad company, alleging that, in the construction of the railroad through plaintiff's land, the company had erected a dam or obstruction (I assume a "fill") across said stream, and maintained it at a great height, obstructing the natural flow, and raising the water 8 feet above its ordinary level, in consequence of which the water was backed up on plaintiff's lands and flooded the same, to his damage.

The appeal was from an order overruling a demurrer to the complaint upon the general ground.

The Court, in an opinion by Mr. Justice McIver (later Chief Justice), reversing the order appealed from, said:

"Now, stripping these allegations of all unnecessary phraseology can they amount to anything more than an allegation *that the defendant has done an act which, by its charter and right of way granted to it by the plaintiff, it had the legal right to do?* For the mere fact that injury has resulted to plaintiff from such act does not necessarily affect the legality of the act. We suppose that whenever a railroad company acquires the right of way over the lands of another, *either by legal proceedings for condemnation or by agreement with the landowner,* some injury results to the owner of the soil over which the road is constructed, but this cannot be regarded as affecting necessarily the legality of the act of the railroad company in constructing its road. The mere fact that the defendant company has, under its charter, after having obtained from the plaintiff the right of way over his lands, constructed and maintained its roadbed over said lands, does not necessarily give the plaintiff any cause

of action against the company, even though the construction of the road may have resulted in injury to the plaintiff. *To invest the act of the defendant with such a character of illegality as would give the plaintiff a cause of action, some other fact must be alleged. There must be some allegations of facts showing that the defendant in doing the act which it was authorized to do, has either wantonly or through negligence, done the act in such a manner as unnecessarily impaired or injured the rights of the plaintiff.* It may be that, by the exercise of proper care and skill, the crossing of the streams in question might have been so arranged as to cause but little, if any, obstruction to the natural flow of the water; and that such care and skill was not exercised by the company in constructing the work complained of. But if so, these facts should have been alleged in the complaint, *for they would really constitute the plaintiff's cause of action.* The wrong, if any, which was done to the plaintiff by the defendant did not consist in constructing its roadbed over the streams flowing through the lands of the plaintiff, for that it had a legal right to do. Nor did it consist necessarily in the fact that the natural flow of the water was obstructed, for that may have been the inevitable and unavoidable consequence of the construction of the railroad; but it may have consisted in the unskillful and negligent manner in which the work was done. Now, in the complaint there is no allegation of any fact tending to show that the road could have been so constructed as to avoid the result complained of by the exercise of proper care and skill on the part of the defendant company, and no allegation tending to show the want of such care and skill."

See, also, the authorities cited by the writer in his opinion in the case of *White v. R. Co.*, 142 S. C., 284; 140 S. E., 560.

There can be no doubt, under the case of *Brandenberg v. Zeigler,* 62 S. C., 18; 39 S. E., 790; 55 L. R. A., 414; 89 Am. St. Rep., 887, that the water in the upper wet weather

pond was *surface water*. It is there held (quoting syllabus) :

"Water from the surrounding lands, collecting in a pond or basin without an outlet, which in rainy seasons collects and holds quantities of water, but which at times by evaporation and percolation becomes dry, is surface water,"

—which is the exact situation of the wet weather pond in question, as shown by the undisputed evidence in the case.

As between Causey and the railroad company, then, under the case of *Edwards v. R. Co.,* 39 S. C., 472; 18 S. E., 58; 22 L. R. A., 246; 39 Am. St. Rep., 746, the railroad company had the right to beat back such surface water from its right of way, without accountability to Causey for the damage to his land which may have resulted therefrom. There the Court, adopting the common-law rule, declared:

Under the common-law rule, surface water is regarded as a common enemy, and every landed proprietor has a right to take any measures necessary to the protection of his own property from its ravages, even if in doing so he throws it back upon a coterminous proprietor to his damage, which the law regards as a case of *damnum absque injuria,* and affording no cause of action."

It is conceded that the universality of this statement in the *Edwards case* is subject to two exceptions:

"(1) 'It is subject to the general law in regard to nuisances, if its accumulation has become a nuisance *per se,* as, for example, whether it has become dangerous at all times, and under all circumstances, to life, health, or property.' *Baltzeger v. Railway,* 54 S. C., 242; 32 S. E., 358 [71 Am. St. Rep., 789]. And (2) it is an actionable injury, for a person to collect surface water, into an artificial channel, and cast it on another's land, in concentrated form. *Brandenburg v. Zeigler,* 62 S. C., 18; 39 S. E., 790; 55 L. R. A., 414 [89 Am. St. Rep. 887], and *Cain v. Railway,* 62 S. C., 25; 39 S. E., 792." *Rivenbark v. R. Co.,* 124 S. C., 136; 117 S. E., 206.

I think that the *Baltzeger case,* 54 S. C., 242; 32 S. E., 358; 71 Am. St. Rep., 789, is conclusive of the proposition that the action of the railroad company in the case at bar, in the obstruction of the ditch and the backing of the surface water upon the plaintiff's land, did not constitute such a nuisance as would have given Causey a cause of action.

The *Baltzeger case* was decided upon a demurrer to the complaint, which contained the following allegations:

"III. That near to the plaintiff's residence, and running by the same, and across the line of the defendant's railway track, is a hollow or depression in the land, in and through and down which the surface water, in times of rains and floods, has been accustomed by nature, from time immemorial, to pass and flow through, and thereby affording a complete passage and drainage for all surface waters which were collected and entered into said hollow. IV. That about the year 1886 or 1887, the Blackville, Alston and Newberry Railroad Company, a corporation under the laws of this state, constructed the line of railway now owned and operated by the defendant, and in building the line of said railway across the said hollow caused a high embankment to be created, and also dug deep ditches on the upper and lower sides of said embankment, which said embankment completely stopped the flow and passage of the surface water down said hollow, as it was accustomed by nature to flow, and in times of rains and floods caused the said water to accumulate in a pond on the upper side of said railway track, and also caused a considerable quantity of water to accumulate and gather in the said ditch on the lower side of said railroad track; and the said water, so collected, remains in said ditches, and in the pond formed on the upper side of said embankment, for a considerable while after each rain and flood, and it becomes stagnant and emits nauseous odors and gases, which poison and pollute the air in and around the plaintiff's said dwelling house, and renders the same un-

healthy and dangerous to live at, and has within the last three years caused annoyance, sickness, pains and suffering to the plaintiff, and also to the members of his family, and has within that period caused the death of one of plaintiff's children, who was made sick by the offensive and nauseous gases emitted from said stagnant waters. And the plaintiff alleges that the collection and ponding of such waters, as aforesaid, is a nuisance to him, dangerous to the health of himself and family, and the same ought to be abated."

After declaring the common-law rule announced in the *Edwards case,* the Court declares:

"The only exception to the rule that surface water being a common enemy, every landowner has the right to deal with it any such manner as he may see fit, is that it is subject to the general law in regard to nuisances, if · its accumulation has become a nuisance *per se,* as for example, whenever it has become dangerous at all times and under all circumstances to life, health or property. If this was not the law, a person could accumulate the surface water upon his premises in a populous town or city, and although the nauseous gases and vapors escaping from it might be deadly to the the public generally, it could not be abated even by the public authorities. The allegations of the complaint are not sufficient to show that the alleged accumulation of the surface water was a nuisance *per se.*"

I think that the complaint in the case at bar states practically a parallel condition, as in the *Baltzeger case,* and would have met the same fate upon demurrer. The *facts* of the case do not present any stronger showing. I do not think, therefore, that Causey, in any view of the facts as they appeared upon the trial of this case, had a cause of action against the railroad company. But, assuming that he had a cause of action for the negligent construction of the embankment and consequent injury to his land by the overflow of accumulated surface water, it is clear that his right of action did not vest by his deed in the plaintiff his grantee.

In the latest deliverance of this Court upon the subject (*Carroll v. Davis,* 128 S. C., 40; 121 S. E., 601), it is decided:

"Damages for the taking of land or for injury to land not taken belongs to the one who owns the land at the time of the taking or injury and they do not pass to a subsequent grantee of the land except by a provision to that effect in the deed or by separate assignment."

In that case Mrs. Carroll brought an action against Greenwood County, the County Highway Commission, and one Davis, for damages on account of the construction of a highway over her land. The Court held:

"The complaint shows that the road had been actually built and had been in use by the public several months before Mrs. Carroll acquired title to the land. She obtained deed on November 8, 1920. Her husband, Mr. Carroll, testified that the road was built in June, 1920. This shows that she is not entitled to recover compensation. The weight of authority shows that, the plaintiff not being the owner of the land at the time of the entry of the highway commission, she is not entitled to compensation"—quoting the foregoing from 20 C. J., 858, and citing *Bridges v. R. Co.,* 86 S. C., 267; 68 S. E., 551, Ann. Cas., 1912A, 1056.

In the *Bridges case* the Court held:

"On the death of the life tenant, his children had the right to compensation for the right of way, and the damages caused by the construction of the railroad through their land * * * [citing cases]. * * * But the plaintiff, to whom the fee was conveyed, burdened with the apparent easement, has not that right. He bought the land subject to the easement. The right to compensation for the easement was, at the time of the conveyance, in the owners of the land, and was not conveyed by the deed. It was a right personal to them—a mere chose in action—a right which they

could and may have waived. The same question was decided adversely to appellant's contention in *Lewis v. R. R. Co.,* 11 Rich. Law, 91. The Courts of other states are practically unanimous in their decisions to the same effect, as will be seen by reference to the cases cited in the notes to 11 A. & E. Enc. L. (2d Ed.), 1189, and 15 Cyc., 796."

See, also, *Northwestern R. Co. v. Colclough,* 89 S. C., 555; 72 S. E., 494; *Colclough v. Briggs,* 99 S. C., 181; 83 S. E., 35; 20 C. J., 858.

In 15 Cyc., 795, it is said:

"Damages for the taking of land or for injury to land not taken, belong to the one who owns the land at the time of the taking or injury, and they do not pass to a subsequent grantee of the land except by a provision to that effect in the deed or by assignment, or unless the entry or taking was wrongful."

The plaintiff, therefore, being unable to connect her right of action with the right of the grantor, her father, she must recover, if at all, upon her right entirely disconnected from any right which her father may have had.

The right of the plaintiff to recover damages for the *continued obstruction* of the ditch and to require its removal necessarily depends upon either her right to open a ditch from the pond and discharge its water upon the railroad company's right of way, a lower proprietor, or upon the establishment of the fact that the action of the railroad company, 27 years ago, consituted a nuisance as described in the *Baltzeger* and *Rivenbark cases,* and is a continuing nuisance.

As to the first, it would be illogical in the extreme to hold that it is the duty of the railroad company to provide an outlet for water *cast without right upon its property.* The plaintiff stands in exactly the same position as if the ditch had never been dug, and she now proposed to open it up, throw the water in concentrated form upon the defendant's

property, and then complain that the defendant did not take care of it, a complaint which could not be entertained, unless she had the right to do that, which does not exist.

In *Brandenberg v. Zeigler,* 62 S. C., 18; 39 S. E., 790; 55 L. R. A., 414; 89 Am. St. Rep., 887, quoting syllabus, it is held:

"It is an actionable injury to a lower proprietor for an upper one to drain by a ditch surface water collecting in a pond on his lands onto the lower proprietor so as to injure his lands and health."

See, also, *Cain v. R. Co.,* 62 S. C., 25; 39 S. E., 792; *Jones v. R. Co.,* 67 S. C., 181; 45 S. E., 188; *Johnson v. R. Co.,* 71 S. C., 241; 50 S. E., 775; 110 Am. St. Rep., 572; *Touchberry v. R. Co.,* 87 S. C., 415; 69 S. E., 877; *Faust v. R. Co.,* 117 S. C., 251; 109 S. E., 151; *Rivenbark v. R. Co.,* 124 S. C., 136; 117 S. E., 206.

As to the second, the establishment of a nuisance. This, I think, is conclusively settled by the *Baltzeger case* hereinbefore referred to, in which practically the identical facts are declared not to constitute an actionable nuisance.

This case is different from any that I have encountered in investigating the subject. *The wet weather pond was already in existence,* and the only effect produced by the back water appears to have been to raise the water, which at its worst stage was *15 to 18 inches deep.*

I think that the defendant's motion for a directed verdict should have been granted, and for that reason favor granting the petition for a rehearing.